UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALFRED W. COMER, JR., | |
| Plaintiff, | |
| v. | Cause No. 3:23-CV-136-PPS-MGG |
| FRAZIER, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Alfred W. Comer Jr, a prisoner without a lawyer, filed a motion to amend his complaint along with a proposed amended complaint. [DE 52; DE 52-1.] Comer seeks to amend his complaint by adding a new claim and defendant. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In late October or early November 2022, Comer began working in the production kitchen at Westville Correctional Facility. [DE 52-1 at 3.] His job was to prepare inmate meals. *Id*. When he began his job, Food Service Manager Frazier told Comer that she would instruct him on how to prepare the meals and he should not follow the meal

menus. *Id*. However, Comer got different instructions from the District Manager who told him to follow the menus when preparing meals. *Id*.

Frazier and Director "Jason" assigned Comer to work in the production kitchen's diet room. *Id*. On November 20, after he started working in the diet room, Frazier told him to "get out" and then locked the door so he could not enter the room. *Id*. Two days later, on November 22, Comer told Jason that he could not work in the diet room because Frazier did not want him there. *Id*.

Several weeks later, on December 6, Frazier assigned Comer to work on the sack line and told him he had to make 2,500 sack meals in a four-hour period, or he would be fired from his job. *Id*. At the end of December, Jason assigned Comer to work in the diet room with two other inmates. *Id*. On January 2, 2023, Frazier told Comer to "get out of the diet room." *Id*. That same day, Comer filed a grievance about Frazier for harassing him and instructing him to give out the wrong food. [*Id*.; DE 52-2 at 13, 16.]

On January 11, Frazier told Comer to leave the diet room and not to speak to her. [DE 52-1 at 3.] She told Comer to write down what she said so he could file a grievance. *Id*. Later that day, Jason assigned Comer to work in the diet room. *Id*. After Comer returned to the diet room, Frazier once again told him to leave. *Id*. at 3-4. He reported the incident to Jason, who escorted him back to the diet room, where they found Frazier had removed all of the chairs. *Id*. at 4.

On February 13, Comer met with Food Service Manager Cross in her office. *Id*. Frazier, who was also present, told Comer to "get out of the office." *Id*. Comer reported the incident to Jason. *Id*. Shortly thereafter, Frazier instructed the production kitchen

2

officer to "put [Comer] out of the [production kitchen]" and told him to file a grievance about the incident. *Id*. Comer then met with Jason, who told him he would take care of the situation. *Id*.

The next day, on February 14, Comer returned to the diet room where he learned Frazier had assigned Food Service Supervisor Beacham to work with him. *Id*. Beacham told Comer that Frazier planned to assign him to work on the population food line and he would be given additional duties. *Id*. On February 20, a correctional officer told Comer to leave the diet room and prepare his meal trays on the production kitchen's service floor table. *Id*. He later learned Frazier had directed that this be done so she could remove the meals trays from the diet room and put them on the floor in order to undermine his job performance. *Id*.

On February 27, Comer met with Jason to ask him if there were other inmates who could help him with the additional duties Frazier had assigned him. *Id*. Cross, who was present at the time, said to Comer, "why don't you find a new job?" *Id*. Comer responded to Cross by telling her he was not going anywhere. *Id*. Cross explained he could get fired and he did not have "control over [his] job." *Id*. Later that day, Comer filed a grievance about Cross because she told him to leave his job and believed Cross and Frazier were going to ask Beacham to fire him. [*Id*.; DE 52-2 at 16.]

On March 11, at about 3:25 a.m., Comer asked Beacham to open the milk cooler so he could get food out for the day. [DE 52-1 at 4.] Beacham told Comer that he could not use the meat in the cooler because Frazier said he should prepare the day's meals using the menus. *Id*. However, Comer explained that inmates who require gluten free

3

diets cannot eat breakfast soy meats, but Beacham told him that Frazier said inmates with those diet restrictions can eat soy meats. *Id*. at 4-5. Comer later discussed this incident with the production kitchen officer and wrote to the warden because he had been asked to serve harmful food. *Id*. at 5.

On March 15, Comer was sitting in the diet room with another inmate when Beacham entered the room. *Id*. He asserts she removed some type of contraband from the front of the kitchen pans, but did not see him when she handed the contraband to the other inmate. *Id*. Comer reported the incident to the production kitchen officer, who said he would send an email to prison staff. *Id*. He told the officer that Beacham would be returning to the prison with more contraband on March 18. *Id*.

On March 20, Beacham called Comer several derogatory names because someone had tipped her off about his report. *Id*. Two days later, on March 22, Beacham again called Comer names. *Id*. Later that day, Comer filed a grievance about Beacham for being disrespectful and calling him derogatory names. [*Id*.; DE 52-2 at 16.] On March 25, at 4:30 a.m., Comer was removed from his job in the production kitchen. [DE 52-1 at 5.]

On March 29, Comer wrote to Deputy Warden Watt about the grievances he had filed and the uncooperative prison administration, but he did not receive a response. *Id*. Internal affairs investigators also met with Comer and told him he would be given a different job. *Id*.

On May 16, Comer met with his counselor to discuss his Offender Evaluation and Performance Report that Frazier completed on March 22. [*Id*.; DE 52-2 at 21.] She evaluated Comer's job performance as being "below average" and noted he was "[v]ery

4

argumentative with staff, doesn't take direction or authority very well. Likes to manipulate and threaten staff with lawsuits, when he doesn't get his way." [DE 52-2 at 21.] She indicated Comer should be removed from the production kitchen. *Id*.

On September 3, a correctional officer told Comer he was being placed back on the count letter to work in the production kitchen. [DE 52-1 at 5.] When he returned to his job, a Food Service Supervisor said "that [Comer] want[s] to be here long," suggesting that he wouldn't be in his role for long if he did not follow directions. *Id*. Comer asked her if she was threatening him, but instead of answering him, she "kept saying you want [to be] here long." *Id*.

On October 30, Comer asserts Correctional Officer Knowle threatened to remove him from the "PLUS program" because he liked to file grievances. *Id*. at 6. Several days later, on November 3, Knowle told Comer she was going to write him up for running in the dayroom, which would result in his removal from the Plus Program. *Id*. On November 8, Knowle continued to harass Comer by making faces at him and saying things to upset him. *Id*.

Based on all this, Comer alleges he was subjected to unlawful retaliation. Under the First Amendment, an inmate cannot be punished for engaging in certain kinds of speech. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal

5

quotation marks and citation omitted). *See, e.g.*, *McCullough v. Downs*, 2023 WL 3996361, at *2 (S.D. Ind. June 14, 2023). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Comer alleges he was fired from his job in retaliation for filing grievances about Frazier, Cross, and Beacham. Filing a grievance qualifies as "protected activity" for purposes of a First Amendment claim. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). As to Frazier, Comer alleges that, after he filed a grievance about her on January 2, 2023, she subjected him to a number of adverse actions, such as repeatedly telling him to leave the diet room, removing chairs from the diet room, directing a correctional officer to remove him from the production kitchen, assigning him additional job duties, undermining his job performance, and firing him from his job. While most of the adverse actions Comer describes are unlikely to deter First Amendment activity, losing one's source of income or job is a deprivation that could "likely deter a person of ordinary firmness from continuing to engage in protected activity." *See Douglas*, 964 F.3d at 646 (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (same).

Furthermore, Comer has alleged a plausible connection between his protected activity and his job loss. It can be inferred that Frazier's decision to fire Comer on March 25, is casually linked to his January 2, grievance about her because in his Offender Evaluation and Job Performance Report she rated his performance as "below average" and noted he liked to "manipulate and threaten staff with lawsuits, when he doesn't get his way." [DE 52-2 at 21.] *See Gomez*, 680 F.3d at 866 (even though an inmate does not

6

have a constitutional right to a prison job, "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.") (citation omitted). Therefore, giving Comer the benefit of the inferences to which he is entitled at this stage, he may proceed on a First Amendment retaliation claim against Frazier for firing him from his job.

As to Cross and Beacham, Comer has not stated First Amendment retaliation claims against either of these defendants. Here, Comer engaged in protected activity when he filed a grievance about Cross on February 27 and a grievance about Beacham on March 22. [DE 52-2 at 16.] While he asserts that Cross and Beacham verbally harassed him when they told him to find a new job and called him derogatory names, these actions were prior to Comer's protected activity. These actions also are not sufficiently adverse to dissuade a reasonable person from engaging in future First Amendment activity. *See Douglas*, 964 F.3d at 646; *Perez* 792 F.3d at 783. However, even if these actions could plausibly deter First Amendment protected activity, Comer has not alleged that Cross and Beachman made the decision to fire him or had the authority to do so. He may not proceed against these defendants.

Furthermore, Comer has sued Knowle, asserting he threatened to write him up and removed him from the Plus Program in retaliation for filing grievances. However, Comer's retaliation claim against Knowle is unrelated to his retaliation claims against Frazier, Cross, and Beacham. His allegation against Knowle pertains to his potential removal from the "PLUS program" in October or November 2023, whereas his

7

retaliation claims against the other three defendants relate to his March 25, job loss. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits[.]"). *See also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). If Comers wishes to pursue his unrelated claim against Knowle, he must do so in a new lawsuit, which requires that he pay a filing fee either at the outset of the case or, if he qualifies to proceed *in forma pauperis*, over time. Therefore, Knowle will be dismissed from this case.

As a final matter, Comer filed a motion asking the court to screen his amended complaint. [DE 51.] Because the court has now done that, the motion will be denied as moot.

**ACCORDINGLY**, the Court:

(1) **DENIES AS MOOT** the motion to screen complaint [DE 51];

(2) **GRANTS** the motion to amend complaint [DE 52];

(3) **DIRECTS** the clerk to separately docket the amended complaint [DE 52-1];

(4) **DISMISSES** Correctional Officer Knowle pursuant to Federal Rule of Civil Procedure 21;

(5) **GRANTS** Alfred W. Comer, Jr., leave to proceed against Food Service Manager Frazier in her individual capacity for compensatory and punitive damages for firing him from his job in the production kitchen on March 25, 2023, in retaliation for filing a grievance about her, in violation of the First Amendment;

(6) **DISMISSES** all other claims;

(7) **DISMISSES** Food Service Manager Cross and Food Service Supervisor Beacham;

(8) **DIRECTS** the Clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Food Service Manager Frazier at Aramark, with a copy of this order and the amended complaint [DE 52-1];

(9) **ORDERS** Aramark to provide the full name, date of birth, and last known home address of the defendant, if she does not waive service if it has such information; and

(10) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Food Service Manager Frazier to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

ENTERED: January 29, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT