UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALFRED W. COMER, JR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-136-PPS-AZ |
| FRAZIER, | |
| Defendant. | |

## OPINION AND ORDER

Alfred W. Comer, Jr., a prisoner without a lawyer, is proceeding in this case against Food Service Manager Shamika Frazier for firing him from his job in the kitchen at the Westville Correctional Center. Comer claims his firing was in retaliation for filing a grievance about Ms. Frazier. [DE 58 at 8]. Frazier now seeks summary judgment, and the matter is fully briefed. [DE 185, 195, 198, 199]. Because the evidence is undisputed that Frazier was unaware that Comer had filed a grievance against her, no jury could conclude that Comer's grievance was a motivating factor in his being sacked from the kitchen job. Summary judgment will therefore be granted to the defendant, Ms. Frazier.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party

and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

To prevail on a First Amendment retaliation claim, Comer must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To satisfy the third element, Comer must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted).

Once Comer makes out a prima facie case, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If the defendant carries this burden, Comer may still get to trial by showing that the defendant's reasons for taking the action they did are phony—in legal terms, a pretext. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The parties provide evidence showing the following facts: During all relevant times, Frazier was the Food Service Manager at Westville and Food Service Director Jason English was her supervisor. [DE 187-3 at 1-2; DE 187-4 at 1]. Around October 2022, Comer began working in the Westville kitchen. [DE 23 at 2]. He was assigned to work in the special diet room. [DE 187-3 at 1-2]. Over a period of time, Food Service Manager Frazier began to notice the food supply for special diets was being used up faster than normal. [*Id.* at 2]. She checked the special diet meals Comer had been preparing and realized he was adding extra food. [*Id.*] Frazier spoke with Comer and explained they had to follow the special diet menu that had been approved by IDOC. [*Id.*] According to Comer, he was preparing the meals correctly because he "knows the menu" better than Frazier and she wanted him to give out the wrong food. [DE 195-1 at 5].

Sometime later, Frazier realized Comer was continuing to put extra food on the special diet meals and was disregarding her instructions. [DE 187-3 at 2]. She removed Comer from the special diet kitchen and assigned him instead to a position in the production kitchen. [*Id.*] While Comer was in the production kitchen, Frazier observed him trying to add extra food to the meals he was preparing. [*Id.*] Frazier also overhead Comer make threatening comments about her to another inmate, and reported this incident to her supervisor. [*Id.*; DE 187-4 at 2.][1]

On January 2, 2023, Frazier noticed the Westville kitchen was overstaffed in the diet room and understaffed in the production kitchen. [DE 187-3 at 2]. She asked Comer

---

[1] Comer responds he never made threatening statements *directly to* Food Service Manager Frazier or any other supervisor, but he does not dispute he did make threatening statements about Frazier to another inmate which she overheard. [*See* DE 195-1 at 7].

3

why they had so many workers in the diet room, and Comer responded that another Food Service Director (a person named English) had stated they could all be in the diet room that day. [*Id.*] Food Service Manager Frazier told Comer that some of them needed to work in the production kitchen because they were short staffed and instructed Comer to return to the production kitchen. [*Id.*] Comer proceeded to argue with Frazier and accused her of ignoring Food Service Director English's instructions. [*Id.* at 2-3]. During the argument, Comer stated something like "I file grievances and I sue." [DE 167 at 7]. Thereafter, Frazier spoke with Food Service Director English and learned he had told Comer he could have extra workers in the diet room on January 1 but had not told Comer those workers could remain in the diet room on January 2. [DE 187-3 at 3; DE 187-4 at 2].

Following this incident, dueling reports were filed were filed on January 2, 2003. Frazier prepared a "Report of Conduct" against Comer.[2] And for his part, Comer filed a grievance against Frazier ("January 2 grievance"). [DE 187-3 at 2-3; DE 187-1 at 1; DE 23 at 12]. On January 6, 2023, the grievance office returned Comer's January 2 grievance to him because it requested improper relief. [DE 23 at 11]. The "Return of Grievance" form did not include any response from Frazier. [*Id.*] Frazier attests she was not aware Comer had filed his January 2 grievance against her at this time, and did not learn about the existence of this grievance until after Comer had filed this lawsuit. [DE 187-3 at 4]. She attests that grievances filed against her are not sent to her directly, but rather are sent to

---

[2] Comer asserts this Report of Conduct was never filed with IDOC, he was never provided a copy of the report until after he filed this lawsuit, and the report was only ever signed by Food Service Manager Frazier. [DE 195-1 at 9-11]. I accept these assertions as true.

4

her supervisor Food Service Director English for a response. [*Id.*] Food Service Director English attests he never told Food Service Manager Frazier about Comer's January 2 grievance, and to the best of his knowledge she was not made aware of the grievance. [DE 187-4 at 2].

On March 20, 2023, one of Food Service Manager Frazier's employees, a woman named Beacham, had an issue with Comer refusing to listen to instructions. [DE 187-3 at 3]. Beacham prepared an Incident Report Form[3] related to this incident. [*Id.*; DE 187-2]. According to the Incident Report Form, Beacham told Comer to stop putting food in the oven on high without covering the food, but Comer refused to listen. [DE 187-2]. Beacham requested that Comer be removed from the diet room because she "doesn't want the chaos." [*Id.*] Beacham also wrote a "Report of Conduct" related to this incident stating Comer continued not to accept or listen to instructions. [DE 23 at 14].[4]

On March 22, 2023, Food Service Director English wrote an email to several Aramark employees informing them that he had been having issues with Comer in the Westville kitchen. [DE 168-2]. Food Service Director English stated Comer had not been following the menu and had been refusing instructions from supervisors. [*Id.*] That same day, Frazier prepared an evaluation of Comer's performance in the kitchen. [DE 187-3 at 4]. Neither party provides a copy of this evaluation. According to Frazier, she mentioned in her evaluation that Comer had a tendency to threaten lawsuits, but she

---

[3] Comer again asserts he did not receive a copy of this "Incident Report Form" until after he filed this lawsuit. [DE 195 at 12]. I accept this as true.

[4] Comer did receive a copy of this "Report of Conduct" before he filed this lawsuit, as he attached a copy of this report to his amended complaint.

5

mentioned this only as evidence of his combative nature and failure to comply with his job duties, not to suggest he should be removed from the kitchen simply for threatening lawsuits. [*Id.*]

Following this Comer's evaluation, Frazier fired Comer from his job in the Westville kitchen. [*Id.*] Frazier and Food Service Director English attest that Comer was fired from the kitchen because he was argumentative with staff and refused to adhere to the diet menu and follow instructions, not because he filed a grievance. [DE 187-3 at 4; DE 187-4 at 2]. Frazier attests that she was not even aware Comer had filed any grievance against her at the time she fired him from Westville's kitchen. [DE 187-3 at 4].

Here, as discussed above, Comer can only survive summary judgment by providing admissible, non-speculative evidence showing that his filing of a grievance against Food Service Manager Frazier was "at least a motivating factor" in her decision to fire him from the WCF kitchen. *See Bridges*, 557 F.3d at 546; *Trade Fin. Partners, LLC*, 573 F.3d at 407 ("[I]nferences relying on mere speculation or conjecture will not suffice" to create a genuine dispute). The record contains no such evidence. Specifically, Frazier attests she did not even know Comer had filed a grievance against her at the time she fired him from the WCF kitchen, and she only learned about the grievance after Comer filed this lawsuit against her. [*See* DE 187-3 at 4]. This is further supported by the fact that any grievance filed against her would have gone to Food Service Director English for a response, and English attests he never informed Frazier about Comer's January 2 grievance. [*See id.*; DE 187-4 at 2].

6

In his response, Comer provides no non-speculative evidence disputing any of these attestations. He does however raise three arguments that must be addressed. First, Comer argues Food Service Director English did inform Food Service Manager Frazier about the grievance because "Defendant Frazier is a manager, so why would he not tell her about the grievance?" [DE 195-1 at 18]. But Comer's mere speculation that Food Service Director English told Frazier about the grievance is insufficient to create a genuine dispute. *See Trade Fin. Partners, LLC*, 573 F.3d at 407; *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) ("speculation may not be used to manufacture a genuine issue of fact."). Comer does not argue or provide any evidence he has any personal knowledge that Food Service Director English or any other person ever told Frazier about his January 2 grievance. *See* Fed. R. Civ. P. 56(c)(4) (an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [affiant] is competent to testify on the matters stated"); *Packer v. Trustees of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) (same).

Second, Comer argues Frazier and Food Service Director English are not credible and "no jury would believe that she did not know I had filed a grievance on her." [DE 195-1 at 18]. But Comer cannot create a genuine dispute merely by challenging Food Service Manager Frazier and Food Service Director English's credibility. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("when challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."). To repeat,

7

the record contains no evidence that Frazier was aware of Comer's January 2 grievance when she fired him from the Westville kitchen.

Finally, Comer argues Frazier admitted in her interrogatory responses that after she moved him from the diet room to the production kitchen on January 2, he told her "I file grievances and I sue." [*See* DE 167 at 7]. But Comer's general warning to Frazier that he "files grievances" does not show that Frazier was aware Comer had in fact filed a grievance against her before she canned him from the kitchen job. Nor does it prove that his filing of a grievance was a "motivating factor" in her decision to fire him.

In sum, there is no non-speculative evidence in the record disputing Frazier's attestation she was unaware Comer had filed a grievance against her when she fired him from the Westville kitchen in March 2023. Accordingly, no reasonable jury could conclude that Comer's filing of his January 2 grievance was "at least a motivating factor" in Frazier's decision to fire Comer from the Westville kitchen.

One more thing: even if Comer had provided evidence showing his filing of his January 2 grievance was a "motivating factor" in Frazier's decision to fire him from the kitchen, Frazier has provided non-pretextual evidence showing Comer would have been fired anyway, regardless of any bad motive. *See Mays*, 575 F.3d at 650; *Valentino*, 575 F.3d at 670. Specifically, it is undisputed Frazier had numerous issues with Comer being argumentative and refusing to follow instructions. While Comer argues he knew the menu better than Frazier and was in fact following the menu correctly, he does not dispute that he repeatedly argued with Frazier and ignored her instructions. And while Comer argues the "Report of Conduct" and "Report of Incident" forms completed by

8

Frazier were never filed with IDOC and never provided to him before he filed this lawsuit, he does not dispute that he engaged in the conduct described in those reports, including being argumentative and refusing to follow instructions. Lastly, Comer does not dispute that he made threatening comments about Frazier to another inmate that she overheard.

Therefore, even if Comer had provided evidence that his filing of his January 2 grievance was a "motivating factor" in Frazier's decision to fire him from the Westville kitchen, the undisputed facts show that Frazier had valid reasons for firing Comer apart from any bad motive, and Comer has not shown those reasons were mere pretext. *See Mays*, 575 F.3d at 650; *Valentino*, 575 F.3d at 670.

For these reasons, the court:

(1) **GRANTS** Food Service Manager Frazier's motion for summary judgment [DE 185]; and

(2) **DIRECTS** the clerk to enter judgment in favor of Shamika Frazier and against Alfred W. Comer, Jr., and to **CLOSE THIS CASE**.

**SO ORDERED** on November 3, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT